STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

FILED

May 20 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JIANYUN "TONY" YE, <br><br> Defendant. | No. 19-CR-0111-02 LHK <br><br> VIOLATIONS: 18 U.S.C. § 371 – Conspiracy to Defraud the United States; 18 U.S.C. § 1512(b)(3) – Obstruction of Justice; 18 U.S.C. §§ 981(a)(1)(C), 18 U.S.C. § 982(a)(6), and 28 U.S.C. § 2461(c) – Criminal Forfeiture. |

S U P E R S E D I N G   I N F O R M A T I O N

The Acting United States Attorney charges that, at all relevant times:

<u>Introductory Allegations</u>

1. Danhong "Jean" CHEN resided in Atherton, California and elsewhere. She held herself out as the managing partner of the Law Offices of Jean D. Chen and was licensed to practice in New York. CHEN became a naturalized citizen of Dominica in or about October 2018 under the name Maria Sofia Taylor.

2. Jianyun "Tony" YE resided in Atherton, California and elsewhere, and he was formerly married to CHEN. He was employed by the Law Offices of Jean D. Chen and held himself out as its office manager.

3. The Law Offices of Jean D. Chen, A Professional Corporation (the "Law Offices") was incorporated in California in 2007 and had its principal place of business in San Jose, California. Chen

was the sole partner and principal of the firm, which held itself out as specializing in immigration law. The Law Offices had three office locations: San Francisco office: 465 California Street, Suite 410, San Francisco, California; San Jose office: 2107 North First Street, Suite 400, San Jose, California; Beijing office: Beijing Broadcasting Building, Suite 1101-2, No. 14, Jian Guo Men Wai Da Jie, Chaoyang District, Beijing.

4. K.C. resided in Hong Kong, China. According to CHEN, he was a family friend and business associate of CHEN and YE. K.C. was purported to be Director of U.S. Immigration Services of Beijing New Horizons Investment Consulting Co., Ltd. ("New Horizons"), a China-based entity controlled, in part, by CHEN and YE. K.C. held an account at Charles Schwab & Co., Inc. ending in xx6828.

5. K.R. resided in Emeryville, California and elsewhere. Beginning in approximately June 2016, she claimed to be the sole owner and manager of Golden State Regional Center, LLC. In addition, multiple documents drafted before June 2016 indicated that K.R. was the sole owner and manager of Golden State Regional Center, LLC.

6. Golden State Regional Center, LLC ("Golden State RC"), a California Limited Liability Company, was organized in 2012 and had its principal place of business in San Jose, California. According to sale documents in 2014, it was acquired by Tree Lined Properties LLC ("Tree Lined Properties"), an entity which was controlled by CHEN and YE at the time. YE operated Tree Lined Properties. When Golden State RC was sold to Tree Lined Properties, and at all relevant times thereafter, K.R. was the purported manager of Golden State RC. Golden State RC held a Wells Fargo bank account ending in xx5360.

7. Golden State RC managed Bay Area Investment Fund I and Bay Area Investment Fund II, both of which were California Limited Liability companies and recognized by the United States Citizenship and Immigration Services ("USCIS") as new commercial enterprises ("NCE"). Nearly all foreign investors in Bay Area Investment Fund I and Bay Area Investment Fund II were clients of the Law Offices. Bay Area Investment Fund I held a Wells Fargo bank account ending in xx5378. Bay Area Investment Fund II held a Wells Fargo bank account ending in xx3111 and xx5090.

8. B.L. resided in Atherton, California and elsewhere. She was the purported owner and

SUPERSEDING INFORMATION 2

operator of Golden California Regional Center, LLC ("Golden California RC").

9. Golden California RC was a California Limited Liability Company. It was organized in 2012 and had its principal place of business in Palo Alto, California. Some clients of the Law Offices invested in NCEs managed by Golden California RC.

## The EB-5 Visa Application Process

10. The United States administered a federal immigration program called the "Employment-Based Immigration Fifth Preference" program, more commonly known as the "EB-5" program. The EB-5 program was intended to promote economic growth in the United States, primarily through new job creation, by encouraging foreign investment in this country. The EB-5 program allowed foreign nationals to obtain permanent United States residency (commonly known as "green card" status) by investing in qualifying United States businesses. Foreign investors who complied with program requirements initially received a grant of conditional permanent residency status for a two-year period. After this period, the foreign investor could petition for permanent residency.

11. To obtain an EB-5 visa, the foreign investor had to satisfy three primary program requirements: (1) the foreign investor had to invest at least $1 million (hereinafter, the "capital contribution") in the United States; (2) the capital contribution had to be made in a qualifying business known as a "new commercial enterprise," or "NCE"; and (3) the capital contribution had to create or preserve full-time positions for at least 10 qualifying employees within two years. The minimum amount of the capital contribution could be reduced from $1 million to $500,000 if the NCE was located in an area designated as a "targeted employment area," which could be a rural or high-unemployment area as determined by United States Citizenship and Immigration Services ("USCIS"). USCIS was a component of the United States Department of Homeland Security and administered the EB-5 program.

12. EB-5 investments sometimes were promoted by entrepreneurs seeking financing for projects such as real estate developments. These promoters sometimes established "regional centers," which are entities that promote EB-5 investments within a designated geographic area. To obtain regional center status, the promoter had to provide USCIS with materials describing the kinds of new commercial enterprises (NCEs) that may operate under the regional center, and the types of jobs that will be created either directly or indirectly as a result of the investments. Such materials included I-924

and I-924A forms. A foreign investor could, but was not required to, invest in an NCE affiliated with a regional center.

13. Prospective foreign investors who wished to participate in the EB-5 program had to file "I-526" petitions with USCIS. An I-526 petition had to establish that the foreign investor would more likely than not satisfy EB-5 program requirements. For example, the petition had to show that the foreign investor has invested (or is in the process of investing) the required amount of funds in an NCE; that the funds came from a lawful source; and that the investment would more likely than not create at least 10 qualifying jobs in the United States.

14. To make these showings, foreign investors typically provided USCIS with supporting materials, which could include a project business plan, a budget, and applicable offering materials. USCIS reviewed and relied on these materials in determining whether the I-526 application should be granted. During the pendency of the I-526 petition, the proposed project had to proceed, in all material respects, in the manner described in the I-526 petition and supporting materials. If the actual project materially diverged from the I-526 proposal before USCIS granted the petition and the foreign investor became a conditional permanent U.S. resident, USCIS could deny the I-526 petition.

15. If USCIS approved an I-526 petition, the petitioner/ foreign investor received conditional permanent residency for a two-year period. After two years, the immigrant could file a second petition, known as an "I-829 petition," to remove the conditions on the foreign investor's residency status. If the I-829 petition demonstrated the foreign investor had in fact invested the minimum amount of funds in the NCE; that the investment had created at least 10 jobs; and that other program requirements were satisfied, the petition could be granted and the foreign investor could receive his or her "green card," or unconditional permanent residency.

16. A fundamental rule of the EB-5 program was that every dollar of each EB-5 foreign investor's capital contribution had to be invested directly in the entity directly responsible for creating employment, which was known as the "job-creating enterprise," or "JCE." Further, the full investment had to remain at risk and be used for job-creation purposes in that project. If any portion of the $1 million (or $500,000) capital contribution was used for a purpose other than the project, the investment would be deemed non-compliant with EB-5 regulations. In particular, no portion of the foreign

investor's capital contribution could be used to pay regional center expenses, such as expenses associated with promoting the EB-5 investment.

17. Additionally, USCIS would not approve without supplemental information and additional investigation, and could refuse to ever approve, an I-526 application that had any one of the following inaccurate, false, and fraudulent representations:

- a) False and fraudulent signatures of the purported manager of the regional center;
- b) False identification of the manager of the regional center and false assertions about his or her role at the regional center;
- c) False representations about the use and receipt of foreign investor Administrative Fees, including the payment of "finder's fees" or "referral fees," which commonly refer to funds provided by foreign investors in addition to their investment of $500,000 or $1,000,000;
- d) False representations about the attorneys who represent the regional center, NCE, JCE, and foreign investor, including representations about each entity having separate counsel; and
- e) False representations about the use of foreign investor funds to capitalize a JCE, that is, the release of funds held by an NCE to the JCE, before that foreign investor's I-526 application is approved.

COUNT 1: (18 U.S.C. § 371 – Conspiracy to Defraud the United States)

18. The factual allegations of paragraphs 1 through 17 are realleged as if fully set forth herein.

19. From on or about December 2014, and continuing until on or about December 18, 2017, in the Northern District of California and elsewhere, the defendant,

JIANYUN "TONY" YE,

did unlawfully, voluntarily, intentionally and knowingly conspire, combine, confederate, and agree with another person to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the United States Citizenship and Immigration Services ("USCIS"), a component of the United States Department of Homeland Security, in the administration

of the Employment-Based Immigration Fifth Preference ("EB-5") visa program and did conspire to knowingly make under oath, or penalty of perjury, a false statement with respect a material fact in an application, affidavit, and other document required by immigration laws or regulations prescribed thereunder, in violation of Title 18, United States Code, Section 1546(a).

20. The objectives of the conspiracy were, among other things, (a) to obtain investment funds from foreign investors using false and misleading statements, and omissions of material facts; (b) to divert investor funds for specific EB-5 projects before foreign investors received conditional approvals for their visas from USCIS; (c) to obtain referral fees that were not permitted to be paid to United States citizens, and (d) to obtain USCIS approval of investor petitions by providing false information and making false statements regarding the use of investor funds and other facts.

## MANNER AND MEANS OF THE CONSPIRACY

21. The Law Offices and CHEN represented foreign investors who invested in Bay Area Investment Fund I and Fund II.

22. Contrary to the representations made to foreign investors, The Law Offices and CHEN knowingly controlled and represented Golden State RC at the same time.

23. CHEN and YE controlled the bank accounts of Bay Area Investment Funds I and II, Golden State RC, Tree Lined Properties, and the Schwab account held in name only by K.C. CHEN and YE were the sole signatories on the bank accounts for Golden State RC, Bay Area Investment Fund, and Bay Area Investment Fund II, and they controlled the assets of these entities.

24. CHEN and YE both spoke with and encouraged foreign investors to invest in projects being developed by Golden State RC and made representations to foreign investors that such an investment would be a qualified investment under the rules of the EB-5 program.

25. The subscription documents for the investments in projects being developed by Golden State RC were included with the EB-5 visa applications that were sent to USCIS. These subscription documents falsely identified K.R. as the "Manager" of Golden State RC and falsely represented that K.R. had full control of Golden State RC and its operations. The subscription documents also did not disclose CHEN and YE's roles in Golden State RC, Bay Area Investment Fund I, and Bay Area Investment Fund II.

26. Y.F., Y.G., C.L., X.P., H.Z., M.D., and H.T. were 7 of the foreign investors in Bay Area Fund I. Each made a capital contribution of $500,000 to Bay Area Fund I in furtherance of their EB-5 visa application. Each also paid $50,000 in referral fees.

27. T.N., P.C., and W. L. were 3 of the foreign investors in Bay Area Fund II. Each made a capital contribution of $500,000 to Bay Area Fund II in furtherance of their EB-5 visa application. Each also paid $50,000 in referral fees.

28. Nearly all investors in Bay Area Investment Fund I, including Y.F., Y.G., X.P., H.Z., C.L., M.D., and H.T., made their capital contributions from approximately December 2014 through September 2015.

29. Nearly all investors in Bay Area Fund II, including T.N., P.C., and W.L., made their capital contributions to fund Bay Area Fund II from August 2015 through July 2016.

## OVERT ACTS

30. Between December 2014 and October 2015, The Law Offices of Jean D. Chen submitted I-529 applications to USCIS seeking EB-5 visas for 10 foreign investors: Y.F., Y.G., X.P., H.Z., C.L., M.D., H.T., T.N., P.C., and W.L.

31. These 10 EB-5 visa applications all included false statements in the subscription agreements identifying K.R. as the "Manager" of Golden State RC and representing that K.R. fully controlled its entity and operations. These 10 EB-5 visa applications also failed to disclose the role of YE in Golden State RC, Bay Area Investment Fund I, and Bay Area Investment Fund II.

COUNT 2: (18 U.S.C. § 1512(b)(3) – Obstruction of Justice)

32. The factual allegations of paragraphs 1 through 31 are realleged as if fully set forth herein.

33. From on or about June 2016 to on or about December 8, 2017, in the Northern District of California and elsewhere, the defendant,

JIANYUN "TONY" YE,

did knowingly attempt to intimidate, threaten, corruptly persuade, and engage in misleading conduct toward B.L., and attempted to do so, by instructing and demanding that B.L. delete emails, and ultimately deleted emails in B.L.'s account on her behalf, relevant to the referral fees paid by foreign

investors that were clients of The Law Offices of Jean D. Chen and communications with foreign investors related to CHEN and YE, and communications concerning the Law Offices of Jean D. Chen, with the intent to hinder, delay, and prevent the communication to the Federal Bureau of Investigation, a law enforcement officer, of information relating to the commission and possible commission of a Federal offense, to wit, visa fraud in violation of Title 18, United States Code, Section 1546(a), by CHEN and YE.

All in violation of Title 18, United States Code, Sections 1512(b)(3) and 2.

FORFEITURE ALLEGATION: 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c)

Upon a conviction of the offense alleged in Count 2 of this Superseding Information, the defendant,

JIANYUN "TONY" YE,

shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c) all property, real or personal, constituting, and derived from, proceeds the defendant obtained directly and indirectly as the result of those violations, including but not limited to a forfeiture money judgment in an amount equal to the total proceeds from the commission of said offenses.

If any of the aforementioned property, as a result of any act or omission of the defendant –

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third person;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property that cannot be divided without difficulty,

any and all interest the defendant has in other property shall be vested in the United States and forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

DATED: May 20, 2021

STEPHANIE M. HINDS
Acting United States Attorney

_____
SHEILA A.G. ARMBRUST
Assistant United States Attorney

SUPERSEDING INFORMATION    8

# AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☒ INFORMATION  ☐ INDICTMENT
☒ SUPERSEDING

### OFFENSE CHARGED

Count 1: 18 U.S.C. § 371 - Conspiracy
Count 2: 18 U.S.C. § 1512(b)(3) - Obstruction Justice

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Count 1: maximum 5 years' prison; $250,000 fine, 3 years of supervised release, $100 special assessment, forfeiture, restitution

Count 2: maximum 20 years' prison; $250,000 fine, 3 years of supervised release, $100 special assessment, forfeiture,

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

FILED
May 20 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

### DEFENDANT - U.S

▶ JIANYUN "TONY" YE

DISTRICT COURT NUMBER
**19-CR-0111-02 LHK**

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶ _____
2) ☐ Is a Fugitive
3) ☒ Is on Bail or Release from (show District)
   Northern District of California

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction          ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution
   _____

Has detainer been filed?  ☐ Yes  ☐ No   If "Yes" give date filed _____

**DATE OF ARREST** ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)
_____

☐ person is awaiting trial in another Federal or State Court, give name of court
_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District
_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO. _____

☒ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO. _____

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
_____

Name and Office of Person Furnishing Information on this form _____
☐ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  Sheila A.G. Armbrust

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:
_____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____    Before Judge: _____

Comments: